SHAWNA PARKS (California Bar No. 208301)
STUART SEABORN (California Bar No. 198590)
MICHAEL S. NUNEZ (California Bar No. 280535)
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704
Telephone:   (510) 665-8644
Facsimile:   (510) 665-8511
TTY:         (510) 665-8716

JAY KOSLOFSKY (California Bar No. 97024)
LAW OFFICES OF JAY KOSLOFSKY
P.O. Box 9236
Berkeley, CA 94709
Telephone:   (510) 280-5627
Fax:         (510) 845-3707

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| LIGHTHOUSE FOR THE BLIND AND VISUALLY IMPAIRED, on behalf of itself and all others similarly situated, ANGELA GRIFFITH, on behalf of herself and all others similarly situated, LISAMARIA MARTINEZ, on behalf of herself and all others similarly situated, JOSH SAUNDERS, on behalf of himself and all others similarly situated, SHANA RAY, on behalf of herself and all others similarly situated, and JENNIFER WESTBROOK, on behalf of herself and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>REDBOX AUTOMATED RETAIL, LLC, AND SAVE MART SUPERMARKETS,<br><br>    Defendants. | Case No.: C12-00195 PJH<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SAVE MART'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**<br><br>Date: May 30, 2012<br>Time: 9:00 a.m.<br>Courtroom: Courtroom 3, Third Floor<br>Judge: Hon. Phyllis J. Hamilton |

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. IN THE CONTEXT OF A MOTION TO DISMISS, THE COURT MUST DRAW ALL REASONABLE INFERENCES FROM THE FACTS ALLEGED IN THE COMPLAINT IN PLAINTIFFS FAVOR ....................................................................... 3

III. SAVE MART'S MOTION MISCHARACTERIZES PLAINTIFFS' ALLEGATIONS IN THE COMPLAINT ......................................................................................................... 3

IV. SAVE MART IS LIABLE UNDER TITLE III FOR PROVIDING INACCESIBLE VIDEO-RENTAL KIOSKS TO THE PUBLIC AS GOODS, SERVICES, FACILITIES, PRIVILEGES, ADVANTAGES, AND ACCOMMODATIONS OF ITS SUPERMARKET STORES .................................................................................................. 5

    A. SAVE MARTS' SUPERMARKETS ARE PLACES OF PUBLIC ACCOMMODATION SUBJECT TO THE ANTIDISCRIMINATION REQUIREMENTS OF TITLE III ................................................................................ 5

    B. REDBOX KIOSKS ARE SERVICES, PRIVILEGES, FACILITIES ADVANTAGES, OR ACCOMODATIONS OF SAVE MART'S SUPERMARKET STORES THAT MUST BE ACCESSIBLE TO BLIND AND VISUALLY IMPAIRED CUSTOMERS ............................................................... 5

V. SAVE MART'S PRODUCTION OF ITS AGREEMENT WITH REDBOX IS IMPROPER ......................................................................................................................... 7

VI. THE AGREEMENT BETWEEN SAVE MART AND REDBOX DOES NOT ABSOLVE SAVE MART OF ITS LIABILITY UNDER TITLE III ............................... 8

VII. PLAINTIFFS' ALLEGATION THAT THE KIOSKS THEMSELVES ARE PLACES OF PUBLIC ACCOMMODATION IN NO WAY LIMITS SAVE MART'S LIABILITY FOR PROVIDING THE KIOSKS AS SERVICES OF ITS STORES ......................... 10

VIII. SAVE MART HAS THE POWER TO PROVIDE INJUNCTIVE RELIEF ................... 11

IX. SAVE MART IS ALSO LIABLE AS A LESSOR TO PLACES OF PUBLIC ACCOMMODATION UNDER TITLE III .................................................................... 12

X. SAVE MART'S MOTION FAILS TO DEFEAT PLAINTIFFS' CLAIMS UNDER STATE LAW ................................................................................................................ 13

XI. CONCLUSION ............................................................................................................ 15

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

i

*Lighthouse for the Blind, et al., v. Redbox Retail, et al.,* **Case No.: C12-00195 PJH**
**PLAINTIFFS' OPPOSITION TO DEFENDANT SAVE MART'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

# TABLE OF AUTHORITIES

**Cases**

*Al-Kidd v. Ashcroft*,
   580 F.3d 949 (9th Cir. 2009)..................................................................................................... 3

*Angelucci v. Century Supper Club*,
   41 Cal. 4th 160 (2007) ............................................................................................................ 15

*Ashcroft v. Al-Kidd*,
   131 S.Ct. 415 (Mem) U.S. 2010) .............................................................................................. 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 3

*Botosan v. Paul McNally Realty*,
   216 F.2d 827 (9th Cir. 2000) ..................................................................................... 6, 8, 9, 13

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ...................................................................................................... 7

*Coto Settlement v Eisenberg*,
   593 F. 3d 1031 (9th Cir. 2010) ................................................................................................. 7

*Disabled Rights Action Committee v. Las Vegas Events, Inc.*,
   375 F.3d 861 (9th Cir. 2004) ................................................................................................ 6, 9

*Donald v. Cafe Royale, Inc.*,
   218 Cal.App.3d 168 (Cal. App. 1st Dist. 1990)...................................................................... 14

*Emerick v Kahala L & L, Inc.*,
   2000 WL 687666 (D. HI May 16, 2000) .................................................................................. 9

*Gregory v. Daly*,
   243 F.3d 687 (2d. Cir. 2001)..................................................................................................... 3

*Hankins v. El Torito Rest., Inc.*,
   63 Cal. App. 4th 510 (1998) ................................................................................................... 14

*Independent Living Resources v. Oregon Arena Corp.*,
   1 F.Supp.2d 1159 (D.Or. Apr 08, 1998) ................................................................................... 9

*Independent Living Resources v. Oregon Arena Corp.*,
   982 F.Supp. 698 (D.Or. 1997) .................................................................................................. 9

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .................................................................................................. 7

*Koire v. Metro Car Wash*,
   40 Cal. 3d 24 (1985) ............................................................................................................... 15

*Lentini v. California Center for the Arts*, Escondido,
   370 F.3d 837 (9th Cir. 2004) .................................................................................................. 14

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

ii

*Lighthouse for the Blind, et al., v. Redbox Retail, et al.,* **Case No.: C12-00195 PJH**
**PLAINTIFFS' OPPOSITION TO DEFENDANT SAVE MART'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

*Longberg v. Sanborn Theaters, Inc.*,
   259 F.3d 1029 (9th Cir. 2001) .................................................................................................... 6

*Modern Dev. Co. v. Navigators Ins. Co.*,
   111 Cal. App. 4th 932 (2003) .................................................................................................. 14

*Munson v. Del Taco*,
   46 Cal. 4th 661 (2009) ............................................................................................................. 13

*Nat'l Fed'n of the Blind v. Target Corp.*,
   582 F. Supp. 2d 1185 (N.D. Cal. 2007) .................................................................................. 14

*Neff. v. Am. Dairy Queen Corp.*,
   58 F.3d 1063 (5th Cir. 1995) ..................................................................................................... 7

*Pickern v. Pier 1 Imports*,
   457 F.3d 963 (9th Cir. 2006) ................................................................................................... 12

*Presta v. Peninsula Corridor Joint Powers Bd.*,
   16 F. Supp. 2d 1134 (N.D. Cal. 1998) .................................................................................... 14

*Rendon v. Valleycrest Productions, Ltd.*,
   294 F.3d 1279 (11th Cir. 2002) ................................................................................................. 6

*Rescuecom Corp. v. Google, Inc*.
   562 F.3d 123 (2d. Cir. 2009) ..................................................................................................... 3

*Santa Monica Rent Control Bd. v. Bluvshtein*,
   230 Cal.App.3d 308 (1991) ..................................................................................................... 12

*Harris v. Amgen, Inc.*,
   573 F.3d 728 (9th Cir. 2009) ................................................................................................... 13

*Stone v. City of Los Angeles*,
   114 Cal.App. 192 (1931) ......................................................................................................... 12

*Stoutenborough v. National Football League, Inc.*,
   59 F.3d 580 (6th Cir. 1995) ....................................................................................................... 6

*Thomas Jefferson Univ. v. Shalala*,
   512 U.S. 514 (1994) ................................................................................................................... 6

*Warfield v. Peninsula Golf & Country Club*,
   10 Cal. 4th 594 (1995) ............................................................................................................. 14

**Statutes**

28 C.F.R. § 36.201(b) ..................................................................................................................... 9

42 U.S.C. § 12181 (7)(E)(2006) ................................................................................................ 1, 5

42 U.S.C. § 12182 (2006) ............................................................................................................... 5

42 U.S.C. § 12182 (b)(1)(A)(i) ...................................................................................................... 8

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

Cal. Civ. Code § 51(f); Cal. Civ. Code § 54(c) .................................................................................. 13

**Other Authorities**

H.R. Rep. No. 101-485(II), at 101, 104 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 384, 387... 9

Department of Justice's ("DOJ's") Title III Technical Assistance Manual ("TAM") at § III-3.1000.................................................................................................................................. 5

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Save Mart's Motion to Dismiss demonstrates a fundamental misunderstanding of the allegations in Plaintiffs' Complaint and a misreading of Save Mart's legal obligations under Title III of the Americans with Disabilities Act ("Title III").  Rather than absolve Save Mart of liability – as Save Mart claims – Title III of the Americans with Disabilities Act places liability squarely on Save Mart for offering a good or service in its stores that is wholly inaccessible to its blind and low vision customers.  Indeed, the fact that Save Mart chooses to offer a service that makes something as simple as renting a movie an impossibility for blind and low vision consumers is precisely the type of conduct the ADA was intended to address.  Save Mart's arguments to the contrary ignore the language of the statute and interpreting regulations as well as relevant case law.

In its Motion, Save Mart attempts to evade liability by claiming that the video-rental kiosks in Save Mart's stores and other locations throughout California are the only places of public accommodation at issue in this lawsuit.  These arguments ignore Plaintiffs' allegations in the Complaint that Save Mart's supermarkets are, themselves, places of public accommodation and that Save Mart owns, operates, and/or maintains the supermarkets.  The Motion also ignores the plain language of Title III, which specifically designates grocery stores, such as Save Mart's supermarkets, as covered "places of public accommodation" subject to the antidiscrimination provisions of the statute, and states that goods and services in those public accommodations must be accessible to people with disabilities.[1]

Save Mart also relies on its agreement with Redbox in an attempt to avoid liability. However, the agreement between Save Mart and Redbox is irrelevant to Save Mart's liability under Title III and California law.[2]  As an owner/operator of covered places of public accommodation – here, the supermarkets – Save Mart, must ensure the accessibility of the goods

---

[1] 42 U.S.C. § 12181 (7)(E) (2006).

[2] Moreover, even if the Court is to consider the alleged agreement between Save Mart and Redbox in connection with this Motion, the agreement does not support Save Mart's claim that there is no lease between Redbox and Save Mart regarding the kiosks, and in fact demonstrates that there is a lessor/lessee and/or joint enterprise relationship.

*Lighthouse for the Blind, et al., v. Redbox Retail, et al.,* **Case No.: C12-00195 PJH**
**PLAINTIFFS' OPPOSITION TO DEFENDANT SAVE MART'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

and services it offers its customers at those supermarkets. Save Mart cannot contract away that obligation to any third party. Therefore, any agreement between Save Mart and Redbox does not absolve Save Mart of its responsibility to ensure that the kiosks it offers in its stores are accessible to the blind and visually impaired.

Additionally, the fact that Plaintiffs' Complaint alleges that the Redbox kiosks are also places of public accommodation in their own right in no way limits Save Mart's liability for providing the kiosks in its stores. Save Mart's liability for providing customers with inaccessible kiosks in its stores and Redbox's liability for operating the inaccessible kiosks are not mutually exclusive. Title III and California law both recognize the liability of an owner/operator of a public accommodation when it provides space in its facilities to other places of public accommodations that have inaccessible features. A common example of such relationships is the liability of a shopping mall for the inaccessibility of individual stores housed in its facilities. The relationship between Save Mart and Redbox is no different. Both Save Mart's supermarkets and Redbox's kiosks are places of public accommodation. Save Mart provides physical space in the facilities of its public accommodations to Redbox's kiosks and offers the services provided by Redbox's kiosks to its own customers. Save Mart is liable for the inaccessibility of the kiosks to blind and visually impaired customers as a result.

Finally, Save Mart's Motion fails to acknowledge the fact that injunctive relief is available and appropriate because Save Mart has complete control over all of the services and facilities it offers its customers in its stores. Save Mart can require that any vendor, contractor, or anyone else providing kiosks or other services to Save Mart's customers do so in a way that complies with the disability access laws. If any vendor or contractor refuses to do so, Save Mart can remove the kiosks from its stores at any time.

In short, as the owner and operator of supermarkets that provide Redbox kiosks to their customers, Save Mart cannot avoid liability under Title III and California law for the inaccessible features of the kiosks, regardless of any agreement it has made with Redbox regarding the actual operation of the kiosks. Save Mart's motion to dismiss fails as a result.

2

*Lighthouse for the Blind, et al., v. Redbox Retail, et al.,* **Case No.: C12-00195 PJH**
**PLAINTIFFS' OPPOSITION TO DEFENDANT SAVE MART'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

## II. IN THE CONTEXT OF A MOTION TO DISMISS, THE COURT MUST DRAW ALL REASONABLE INFERENCES FROM THE FACTS ALLEGED IN THE COMPLAINT IN PLAINTIFFS FAVOR

In the context of a motion to dismiss under Rule 12(b)(6), the court must "accept as true all of the factual allegations set out in Plaintiffs' Complaint, draw inferences from those allegations in the light most favorable to Plaintiffs, and construe the complaint liberally." *Rescuecom Corp. v. Google, Inc.* 562 F.3d 123, 127 (2d. Cir. 2009) (*citing Gregory v. Daly*, 243 F.3d 687, 691 (2d. Cir. 2001); *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (*cert. granted* on other issues by *Ashcroft v. Al-Kidd*, 131 S.Ct. 415 (Mem) U.S. 2010). To avoid dismissal under Rule 12(b)(6), a plaintiff must aver in his complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Defendants have not argued that Plaintiffs have failed to meet this standard. Instead, Defendants erroneously claim that they are not the responsible entity for the discriminatory actions alleged in the Complaint. As demonstrated below, Plaintiffs' allegations against Save Mart in the Complaint unquestionably state a claim for relief under Title III and California law. Save Mart's Motion fails as a result.

## III. SAVE MART'S MOTION MISCHARACTERIZES PLAINTIFFS' ALLEGATIONS IN THE COMPLAINT

Save Mart's Motion miscasts Plaintiffs' allegations in the Complaint with respect to Save Mart's liability for providing Redbox's kiosks in its stores. Plaintiffs allege that Save Mart's stores are themselves subject to the antidiscrimination requirements of Title III and that Save Mart discriminates against blind and visually impaired customers by providing only its sighted customers with the opportunity to independently browse, rent, and pay for DVDs at Redbox kiosks housed in its stores. Complaint ¶¶ 34, 35, 44, 48, 49.[3] Save Mart's Motion fails to grasp or acknowledge these allegations.

---

[3] In the context of this motion, the Court takes all of the allegations in the cited paragraphs and throughout the Complaint as true. *See Rescuecom Corp. v. Google, Inc*. 562 F.3d 123, 127 (2d. Cir. 2009)

3

*Lighthouse for the Blind, et al., v. Redbox Retail, et al.,* **Case No.: C12-00195 PJH**
**PLAINTIFFS' OPPOSITION TO DEFENDANT SAVE MART'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

Instead, Save Mart points to language in the Complaint where Plaintiffs allege that the Redbox kiosks are rental establishments and, therefore places of public accommodation. Complaint ¶ 43. Save Mart uses such language to argue erroneously that Plaintiffs' allegations involve only one place of public accommodation – the Redbox kiosks. This characterization ignores the plain language of the Complaint. Plaintiffs' Complaint specifically alleges that Save Mart's supermarkets are, themselves, places of public accommodation subject to the antidiscrimination protections of Title III. The Complaint states:

> "Save Mart's supermarkets and other stores where Redbox kiosks are located throughout California are sales and rental establishments, and, therefore places of public accommodation within the definition of Title III of the ADA." Complaint ¶ 44.

Regardless of whether Save Mart owns or operates the kiosks, Plaintiffs have alleged that Save Mart owns, operates, and/or maintains the supermarkets that make the kiosks available to customers in their stores. Indeed, the Complaint alleges that:

> "Defendant Save Mart is a for-profit corporation that . . . owns, operates, and/or maintains over two hundred supermarket stores throughout California . . . Nearly all of Save Mart's supermarket stores in California provide customers Redbox kiosks and the accommodations, advantages, facilities, privileges, and services offered to customers by such kiosks . . ." Complaint ¶ 21.

In other words, Plaintiffs allege that Save Mart is liable under Title III and California Law for providing inaccessible kiosks to customers as a service or privilege of shopping in its stores. Sighted customers of Save Mart's stores have the option to browse, rent, and pay for videos independently using the touch-screen, Redbox kiosks. Blind and visually impaired customers of Save Mart's stores do not have that option. Regardless of whether it does so on its own or through a contract with a third party, Save Mart offers its sighted customers the privilege of renting videos using the self-service Redbox kiosks. Thus, Save Mart's ownership or lessor status of the kiosks and any agreement between Save Mart and Redbox are irrelevant to Plaintiffs' allegations against Save Mart.

//

//

//

4

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

### IV. SAVE MART IS LIABLE UNDER TITLE III FOR PROVIDING INACCESIBLE VIDEO-RENTAL KIOSKS TO THE PUBLIC AS GOODS, SERVICES, FACILITIES, PRIVILEGES, ADVANTAGES, AND ACCOMMODATIONS OF ITS SUPERMARKET STORES

#### A. SAVE MARTS' SUPERMARKETS ARE PLACES OF PUBLIC ACCOMMODATION SUBJECT TO THE ANTIDISCRIMINATION REQUIREMENTS OF TITLE III

Save Marts' supermarkets are specifically covered under Title III as places of public accommodation, and therefore subject to the statute's anti-discrimination requirements. Title III prohibits discrimination:

> " . . . on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations *of any place of public accommodation by any person who owns, leases, (or leases to) or operates a place of public accommodation*. . ." 42 U.S.C. § 12182 (2006) (emphasis added).

The statute specifies twelve categories of places of public accommodation. Included in that list at subsection (E) are:

> "a bakery, *grocery store*, clothing store, hardware store, shopping center or other sales or rental establishment. 42 U.S.C. § 12181(7)(E) (2006) (emphasis added).

Here, Save Mart does not dispute that its supermarkets are grocery stores, and thereby covered under Title III as places of public accommodations. Nor does Save Mart question Plaintiffs' allegation that Save Mart currently owns, operates, and/or maintains its supermarkets.

#### B. REDBOX KIOSKS ARE SERVICES, PRIVILEGES, FACILITIES ADVANTAGES, OR ACCOMODATIONS OF SAVE MART'S SUPERMARKET STORES THAT MUST BE ACCESSIBLE TO BLIND AND VISUALLY IMPAIRED CUSTOMERS

Title III prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of places of public accommodation. 42 U.S.C. § 12182 (2006). The phrase "goods, services, facilities, privileges, advantages, or accommodations" applies to whatever type of good or service a public accommodation provides to its customers or clients. Department of Justice's ("DOJ's") Title III Technical Assistance Manual ("TAM") at § III-3.1000.[4] At a minimum, the "privileges,

---

[4] The TAM is available at http://www.ada.gov/taman3.html. The guidance provided in the TAM is an interpretation of the DOJ's regulation and, as such, entitled to significant weight

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

facilities, advantages, or accommodations" of places of public accommodation include those services provided on the premises of public accommodations. *See Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1283-84 n. 5, 8 (11th Cir. 2002) (the opportunity to become a contestant on a game show was a good, service, facility, or advantage of the television studio where the game show took place); *compare, Stoutenborough v. National Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) (Court found that television broadcast of professional football game was not a service of the football stadium because it was located off-site and not on the premises of the football stadium.)

Here, Save Mart does not dispute that it has made Redbox kiosks available on the premises of its supermarkets throughout California. Nor does Redbox dispute that it offers its customers the privilege of being able to rent videos using the Redbox kiosks located on the premises of its supermarkets. The opportunity to rent videos at the self-service Redbox kiosks is, therefore, a good, service, facility, privilege, advantage, or accommodation of Save Mart's supermarkets. The fact that Redbox kiosks deny that same opportunity to blind and visually impaired customers makes Save Mart liable under Title III for failing to provide full and equal access to its goods, services, facilities, privileges, advantages, or accommodations.

Save Mart's only argument is that it does not own, operate, or lease the kiosks themselves. Even if that statement were true, it does not defeat Save Mart's liability as the owner/operator of the supermarket stores that house the inaccessible kiosks.[5] Title III and California law recognize that, Save Mart, as the owner/operator of its stores, has ultimate control and responsibility over

---

as the meaning of the regulation. *See Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 875-76 (9th Cir. 2004)(*citing Botosan v. Paul McNally Realty*, 216 F.2d 827, 833 (9th Cir. 2000) and *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 514 (1994)).

[5] The primary case Save Mart relies upon, *Longberg v. Sanborn Theaters*, *Inc.*, actually supports Plaintiffs' allegation that Save Mart is liable as an owner/operator of its supermarket stores. *Longberg* involved a claim against the architects who designed and constructed the public accommodation in question. The architects had no current relationship to the facilities or services of the public accommodation and, therefore, could not be found liable under Title III as owners, operators, or lessors of the public accommodation. *See Longberg*, 259 F.3d 1029, 1033 (9th Cir. 2001). Unlike the architects in *Longberg*, Save Mart is the current owner and operator its supermarkets and, is therefore, liable for any services it offers to the public on the premises of the supermarkets.

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1 everything in it makes available to the public in its stores, including the kiosks.  If the kiosks in
2 Save Mart's stores are inaccessible, as Plaintiffs allege, as the owner/operator of the store, Save
3 Mart is liable.

4 Indeed, all of the cases cited by Save Mart rely on the concept of control to determine
5 whether an entity is liable for access violations.  Here, Save Mart undeniably has control over its
6 stores and the goods and services contained therein.  *See, e.g. Neff. v. Am. Dairy Queen Corp.*, 58
7 F.3d 1063, 1066-69 (5th Cir. 1995) (court based its determination that a franchisor was not liable
8 for access violations in the franchisee's store on the fact that the franchisor had *very little* control
9 over the modifications to the store).

## V. SAVE MART'S PRODUCTION OF ITS AGREEMENT WITH REDBOX IS IMPROPER

Save Mart's production of its agreement with Redbox in support of its motion to dismiss is improper because Plaintiff's Complaint does not allege anything related to the contents of the agreement or make reference to the agreement at all.  "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  The only exception to this rule involves documents that were incorporated into the complaint.  *Coto Settlement v Eisenberg*, 593 F. 3d 1031, 1038 (9th Cir. 2010).

The situation at hand is wholly distinct from the cases cited by Save Mart, which involve information introduced by the defendants that was inherently intertwined with the plaintiffs' claims.  *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (plaintiffs conceded in defamation case that contextual information submitted by defendant would necessarily be seen by viewers next to allegedly defamatory picture).

Here, Plaintiffs' Complaint does not allege the contents of the agreement or even mention the agreement.  At no point within Plaintiffs' Complaint do Plaintiffs mention the existence of the agreement or any provision of the agreement.  Even if Plaintiffs had wanted to allege the contents of the agreement, Plaintiffs could not have done so because Plaintiffs did not gain access to the agreement until after Plaintiffs filed their Complaint.

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1  None of Plaintiffs' claims rely upon the contents of the agreement between Save Mart and
2  Redbox.  Plaintiffs' state and federal claims allege that Save Mart is liable to Plaintiffs because
3  Save Mart operates places of public accommodation, Save Mart stores, and that those stores offer
4  video rental services that are inaccessible to Plaintiffs.  Plaintiffs' claims depend only on the fact
5  that Save Mart offers Redbox kiosks as a service of Save Mart's supermarkets.  The contents of
6  Save Mart's agreement with Redbox are irrelevant to this fact.  Anyone who visits a Save Mart
7  store wherein a Redbox kiosk is located can plainly see that Save Mart is offering a video rental
8  service through Redbox kiosks without ever learning of the existence of the agreement.  Thus,
9  Plaintiffs' claims do not depend on the *contents* of the agreement between Save Mart and
10 Redbox.

11 As such, the alleged agreements submitted by Save Mart are extrinsic evidence and should be
12 excluded at this time.

## VI.  THE AGREEMENT BETWEEN SAVE MART AND REDBOX DOES NOT ABSOLVE SAVE MART OF ITS LIABILITY UNDER TITLE III

Title III specifically prohibits owners, operators, or lessors of public accommodations from contracting away their obligation to provide full and equal access to their goods and services to third parties.  Title III states:

> "It shall be discriminatory to subject an individual or class of individuals on the basis of disability . . . through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, advantages, or accommodations of an entity."  42 U.S.C. § 12182 (b)(1)(A)(i).

If an owner or operator of a place of public accommodation enters into a contract with a third party to provide goods and services at the place of public accommodation and the third party does so in a way that discriminates on the basis of disability, the owner or operator is liable under Title III for discrimination on the basis of disability.  *See Botosan v. Paul McNally Realty,* 216 F.3d 827 (9th Cir. 2000)(Owner of place of public accommodation liable for inaccessible features of real estate business housed on the property, despite clear language in lease agreement that shifted all responsibility for ADA compliance to the operator of the real estate business).  *See also Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 873 fn.8 (9th Cir. 2004) (Court pointed to statutory language and legislative history of Title III to note that the

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

1  "intent of the[se] contractual prohibitions . . . is to prohibit a public accommodation from doing

2  indirectly through a contractual relationship what it may not do directly.")(*citing* H.R. Rep. No.

3  101-485(II), at 101, 104 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 384, 387).

4        Though the courts and the statute recognize that parties may allocate responsibility for

5  compliance with Title III among themselves by contract, such "contractual allocation of

6  responsibility" has no effect on the rights of third parties seeking to enforce compliance with the

7  ADA.  *Botosan*, 216 F.3d at 833 (*citing Independent Living Resources v. Oregon Arena Corp.*,

8  982 F.Supp. 698, 767 (D.Or. 1997) (supplemented on other grounds by *Independent Living*

9  *Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1159 (D.Or. Apr 08, 1998)); 28 C.F.R. §

10  36.201(b).  A party may bring an ADA action and let "the tenant and the landlord fight among

11  themselves over who is responsible to pay for any required improvements."  *Emerick v Kahala L*

12  *& L, Inc.*, 2000 WL 687666 (D. HI May 16, 2000), *18)(citing *Independent Living Resources* at

13  768).  This standard facilitates enforcement of the accessibility provisions of the ADA by

14  preventing an owner of a public accommodation from evading its responsibilities under the ADA

15  by contracting away such responsibilities to tenants or other third parties.  *See Botosan*, 216 F.3d

16  at 834.

17        Here, Save Mart urges the Court to do exactly what the statute and case law prohibit.

18  Save Mart has asked the Court to consider its written agreement with Redbox in an effort to

19  demonstrate that the agreement absolves Save Mart of liability for the inaccessibility of kiosks

20  housed in its stores.  Under Title III, however, any agreement between Save Mart and Redbox,

21  no matter what language it contains, has no effect on Save Mart's obligations as an

22  owner/operator of the places of public accommodations where the kiosks are housed.  Like the

23  owner of the property where the real estate business in *Botosan* was located, Save Mart is liable

24  for the inaccessible features of any services provided at its supermarkets.  The agreement

25  between Save Mart and Redbox may leave the day-to-day operation of the kiosks in the hands of

26  Redbox and may even, as is certainly the case here, allow Save Mart to seek indemnification in

27  the event Redbox operates the kiosks in a manner that violates the law.  However, the agreement

28

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

can never fully absolve Save Mart of its liability under Title III as the owner/operator of the stores where the kiosks are provided to the public.

### VII. PLAINTIFFS' ALLEGATION THAT THE KIOSKS THEMSELVES ARE PLACES OF PUBLIC ACCOMMODATION IN NO WAY LIMITS SAVE MART'S LIABILITY FOR PROVIDING THE KIOSKS AS SERVICES OF ITS STORES

Save Mart bases its motion on the language in Plaintiffs' Complaint alleging that the Redbox kiosks constitute rental establishments and, therefore, places of public accommodation for the purposes of liability under Title III. *See* Def. Save Mart's Motion to Dismiss at 3; Complaint ¶ 43. Plaintiffs do not dispute that they make this allegation. However, the existence of such an allegation in Plaintiffs' Complaint does not defeat Plaintiffs' allegation that Save Mart's stores are also places of public accommodation for purposes of Title III and that Save Mart is liable for providing its customers inaccessible video-rental kiosks on the premises of its stores. Under Title III, a place of public accommodation can be liable for the inaccessible features of another place of public accommodation housed on its premises. *See* the DOJ's Title III TAM at III-1.2000. In its Technical Assistance Manual, the DOJ offers the example shopping center owner that rents space to a boutique on the premises of the shopping center:

> "ILLUSTRATION: ABC Company leases space in a shopping center it owns to XYZ Boutique. In their lease, the parties have allocated to XYZ Boutique the responsibility for complying with the barrier removal requirements of title III within that store. In this situation, if XYZ Boutique fails to remove barriers, both ABC Company (the landlord) and XYZ Boutique (the tenant) would be liable for violating the ADA and could be sued by an XYZ customer. Of course, in the lease, ABC could require XYZ to indemnify it against all losses caused by XYZ's failure to comply with its obligations under the lease, but again, such matters would be between the parties and would not affect their liability under the ADA." *Id.*

In the illustration, both the shopping center and the boutique are places of public accommodation covered by Title III. As such, they are both liable for barriers within their facilities. As the illustration makes clear, customers of the boutique can sue both the shopping center and the boutique for barriers in the boutique – regardless of whether the boutique has been allocated the responsibility for complying with barrier removal requirements within its store.

Here, like the boutique, the Redbox kiosks housed in Save Mart's supermarkets are places of public accommodation that discriminate on the basis of disability. Save Mart's supermarkets,

10

*Lighthouse for the Blind, et al., v. Redbox Retail, et al.,* **Case No.: C12-00195 PJH**
**PLAINTIFFS' OPPOSITION TO DEFENDANT SAVE MART'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

like the shopping center in the illustration, are also places of public accommodation.  Just as the owner of the shopping center is liable for the inaccessibility of boutique, Save Mart is liable for the inaccessibility of the Redbox kiosks housed in its supermarkets.

**VIII.   SAVE MART HAS THE POWER TO PROVIDE INJUNCTIVE RELIEF**

Save Mart's claim that, "injunctive relief against Save Mart would be meaningless," is also both factually and legally incorrect.  As the owner/operator of its supermarket stores, Save Mart has complete control over all of the goods and services it offers customers in the stores.  Indeed, Redbox did not forcibly install its kiosks in Save Mart stores.  Rather, Save Mart chose to contract with Redbox in order to offer the kiosks to its customers as a privilege and service of shopping at Save Mart's supermarkets.  Save Mart can require Redbox or any other operator of services in its supermarkets to ensure that all of its services are accessible to persons with disabilities.  If Redbox or another operator refuses to make its services accessible, Save Mart can remove those services from its stores or contract with another vendor to provide similar services.

The authority Save Mart cites in support of its argument is actually instructive in demonstrating that Save Mart, as the owner/operator of its supermarkets, is a proper party for the purposes of injunctive relief.[6]  Save Mart cites *Longberg v. Sanborn Theaters* for the proposition that "injunctive relief is only meaningful against *the persons currently in control of the building*." Def. Save Mart's Motion to Dismiss at 8; 269 F.3d at 1036 (emphasis added).  Here, it is undisputed that Save Mart is the entity in control of the buildings housing Save Mart's supermarkets and the Redbox kiosks located in those supermarkets.  As the entity in control of the buildings, Save Mart has the power to ensure the accessibility of the goods and services offered to the public in those buildings.

Save Mart also cites *Pickern v. Pier 1 Imports* in support of its argument.  However, *Pickern* involved the inaccessibility of a grassy strip of land on city property – completely off-site and removed from defendants' store.  *See Pickern*, 457 F.3d 963, 966 (9th Cir. 2006).  The *Pickern* Court noted that the Defendant store owner had no control whatsoever over the city-owned land

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

where the grassy strip was located, and therefore, no power to modify the inaccessible features of the grassy strip. *Id* at 966-968. Save Mart's situation is remarkably different from the store owner in *Pickern*. Again, as the owner/operator of the supermarkets where the kiosks are located, Save Mart has complete control over the supermarkets and any goods or services they offer. Because Save Mart has complete control over the supermarkets, it is a proper party for injunctive relief addressing inaccessible kiosks offered to the public in those supermarkets.

## IX.   SAVE MART IS ALSO LIABLE AS A LESSOR TO PLACES OF PUBLIC ACCOMMODATION UNDER TITLE III

As stated above, the Court need not consider the agreement between Save Mart and Redbox to find Save Mart liable under Title III. However, even if the Court were to consider the agreement, it is clear that the agreement creates an additional basis for Save Mart's liability in that Save Mart appears to be a lessor to Redbox. The agreement makes clear that Save Mart leases space to Redbox, and that Redbox operates places of public accommodation, Redbox kiosks, within that space. In exchange, Redbox compensates Save Mart. Such an agreement is a lease akin to any other lease between the owner of a shopping center and a shop keeper, even if Save Mart does not call the agreement a lease. *See, e.g.*, *Santa Monica Rent Control Bd. v. Bluvshtein*, 230 Cal.App.3d 308, 316–317 (1991) (quoting *Stone v. City of Los Angeles*, 114 Cal.App. 192, 198-199 (1931)) ("A lease, as ordinarily understood, is an agreement whereby the relation of landlord and tenant is created. It imports the giving, for a consideration by the owner of the greater estate, of the possession and use of a lesser estate in his property with a reversion to the owner of the greater estate at the end of the term.").

Reading the provisions of the agreement together, it is clear that Save Mart and Redbox intended to create a landlord-tenant relationship. *See* Sections 1.1, 2.2, 3.4, 6.2, 6.3, 6.5 and 12 of the agreement. Because Save Mart leases to places of public accommodation – here, the Redbox kiosks – Save Mart is liable under Title III of the ADA for inaccessible services that Redbox kiosks offer. *Botosan*, 216 F.3d at 832.

---

[6] Plaintiffs' allegations and request for injunctive relief regarding Save Mart are limited to the provision of Redbox kiosks in Save Mart's supermarkets and do not encompass the provisions of Redbox kiosks at other locations.

12

*Lighthouse for the Blind, et al., v. Redbox Retail, et al.,* **Case No.: C12-00195 PJH**
**PLAINTIFFS' OPPOSITION TO DEFENDANT SAVE MART'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Plaintiffs did not allege in their Complaint that Save Mart is an owner, operator, lessor, or lessee of the Redbox kiosks because the validity of Plaintiff's claims against Save Mart does not rely on that allegation.  Additionally, Plaintiffs did not even see the agreement between Save Mart and Redbox until shortly before Save Mart filed its Motion.  Plaintiffs have not had the opportunity to adequately review the agreement or conduct any discovery related to the agreement and the meaning of its terms.  As discussed in Plaintiffs' Opposition to Save Mart's Request for Judicial Notice (filed concurrently), the agreement is extrinsic evidence that should not be considered in the context of this Motion.  The meaning of the agreement's terms may be subject to dispute, or, at a minimum, require fact discovery.   However, in the event the Court decides to consider the agreement, Plaintiffs respectfully request that the court grant Plaintiffs leave to amend Plaintiffs' Complaint to address lessee/lessor allegations.  *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (when granting a motion to dismiss, courts should ordinarily grant Plaintiff leave to amend).

## X. SAVE MART'S MOTION FAILS TO DEFEAT PLAINTIFFS' CLAIMS UNDER STATE LAW

Save Mart's argument that Plaintiffs' claims under California's Unruh Civil Rights Act (Unruh Act) and Disabled Persons' Act (DPA) should be dismissed because they are "predicated upon and redundant with their federal claim under the ADA" (Def. Save Mart's Motion to Dismiss at 10) is legally flawed and misstates the allegations in Plaintiffs' Complaint.

First, because Plaintiffs have a claim under the ADA, Plaintiffs also have a claim under the Unruh Act and the DPA.  Cal. Civ. Code § 51(f); Cal. Civ. Code § 54(c).  Claims under the Unruh Act and the DPA based on underlying violations of the ADA do not require any showing of intent.  *See Munson v. Del Taco*, 46 Cal. 4th 661, 665 (2009).

Furthermore, Plaintiffs also have Unruh Act and DPA claims independent of their ADA claims.  The fact that a violation of the ADA also constitutes *a* violation of the Unruh Act and the DPA does not mean that it constitutes the *only* violation of the Unruh Act or the DPA.  Courts have recognized that Unruh Act and DPA claims are not limited to mirroring ADA claims.  *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1196-98 (N.D. Cal.

13

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

2007) (holding that the Unruh Act and the DPA apply to disability access claims involving web sites even where claims under the ADA would not be available).[7]

Additionally, Save Mart appears to base its argument on its assertion that the Unruh Act and the DPA require allegations of intentional discrimination unless the claim is based on an ADA violation. As an initial matter, no intent is required under the DPA, and the courts have placed doubt on what, if anything, plaintiffs alleging Unruh Act violations must plead regarding defendants' intent.

The DPA contains no requirement that Plaintiffs' plead an intentional violation. *Donald v. Cafe Royale, Inc.*, 218 Cal.App.3d 168, 176 (Cal. App. 1st Dist. 1990) (holding that the DPA does "not require an intentional violation for recovery to be had."). In addition, the *Lentini* case, cited by Save Mart for this proposition, explicitly stated that its holding did not address any requirement of intent for claims under the DPA. *See Lentini v. California Center for the Arts*, Escondido, 370 F.3d 837, 847 n. 10 (9th Cir. 2004).

Further, the law is far from settled regarding the degree to which Plaintiffs must plead Defendants' intent, if at all, in an Unruh Act claim. The Unruh Act itself does not set a standard for proving intent. California courts have held that intentional discrimination under the Unruh Act simply means that the defendant has unlawfully engaged in wrongful and discriminatory conduct with "knowledge of the effect [its conduct] was having on [] disabled persons" (*Hankins v. El Torito Rest., Inc.*, 63 Cal. App. 4th 510, 518 (1998)), or that the defendant intended a facility to be configured in the manner in which it is presented to the public when plaintiff visited. *Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 941, 943 (2003); *see also Presta v. Peninsula Corridor Joint Powers Bd.*, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998) (the "plain language" of the Unruh Act requires a plaintiff to show "only that she 'is a person with a disability, and that Defendants denied her full and equal accommodations, advantages, facilities, privileges, or services because of her disability.'"). This formulation of the intent

---

[7] Indeed, the Unruh Act predates the ADA, and its coverage thus cannot reasonably be limited only to violations of the ADA. *See Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 607-09 (1995) (describing the development of the Unruh Act from 1897 through amendments in 1992).

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Third Floor
Berkeley, CA 94704-1204
(510) 665-8644

requirement is consistent with the California Supreme Court's declaration that the Unruh Act "must be construed liberally in order to carry out its purpose.*" Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167 (2007), citing *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 28 (1985).

Finally, to the extent intent is required, Plaintiffs have pled it out of an abundance of caution. Specifically, Plaintiffs allege that,

> "Defendants' actions constitute intentional discrimination against the class on the basis of a disability in violation of California Civil Code §§51 et seq., Defendants are aware of the complete lack of access of the Redbox kiosks to blind persons yet have deliberately chosen to provide a benefit and service that is inaccessible to the blind.  Moreover, Plaintiffs provided Defendants written notice that Defendants are discriminating against blind individuals by providing self-service, touch-screen DVD rental kiosks that are inaccessible to the blind. Defendants have failed and refused to take any actions whatsoever to correct the access barriers at issue even after being notified of the discrimination that such barriers cause. Complaint, ¶ 53.

Therefore, even if Save Mart could point to a clear intent requirement for Unruh allegations, Plaintiffs' Complaint has satisfied such a requirement.  As a result, Plaintiffs' State law claims would survive even if the Court were to dismiss Plaintiffs' federal claims under Title III.

## XI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request Save Mart's Motion be denied.

DATED:  April 30, 2012                    DISABILITY RIGHTS ADVOCATES
                                          LAW OFFICES OF JAY KOSLOFSKY

                                          By: _/s/ Shawna Parks_____
                                              Shawna Parks
                                              Attorney for Plaintiffs

15

*Lighthouse for the Blind, et al., v. Redbox Retail, et al.,* **Case No.: C12-00195 PJH**
**PLAINTIFFS' OPPOSITION TO DEFENDANT SAVE MART'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**